# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 21-472

MICHAEL LYNN WINGATE

VERSUS

JENNIFER GUILLORY WINGATE

\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## FOURTEENTH JUDICIAL DISTRICT COURT
## PARISH OF CALCASIEU, NUMBER 2017-4368
## HONORABLE W. MITCHELL REDD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHARON DARVILLE WILSON
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, D. Kent Savoie, and Sharon Darville Wilson, Judges.

**AFFIRMED.**

John Green, Jr.
1135 Hodges Street
Lake Charles, Louisiana  70601
(337) 990-0060
Counsel for Plaintiff/Appellant:
     Michael Lynn Wingate

Stephen W. Hale
1735 Ryan Street
Lake Charles, Louisiana  70601
(337) 433-0612
Counsel for Defendant/Appellee:
     Jennifer Guillory Wingate, now Kalscheuer

**WILSON, Judge.**

Jennifer Guillory Wingate, now Kalscheuer (Mrs. Kalscheuer), filed a petition for permission to relocate the principal residence of her minor child from Louisiana to Wisconsin. The child's father, Michael Lynn Wingate (Mr. Wingate), filed an answer to the petition and objected to the relocation. The trial court granted the request, and Mr. Wingate now appeals. For the reasons that follow, we affirm the trial court's ruling,

## I.

## ISSUES

We must decide:

1. whether the trial court erred in finding that Mrs. Kalscheuer's request for relocation to Wisconsin was made in good faith; and

2. whether the trial court erred in finding that relocation to Wisconsin was in the best interest of the child.

## II.

## FACTS AND PROCEDURAL HISTORY

The parties were married on April 20, 2013, and on January 22, 2015, a child was born. The parties separated on February 28, 2017, and their divorce became final by judgment signed on February 28, 2019. The parties stipulated to joint custody with Mrs. Kalscheuer being named domiciliary parent. Prior to Mrs. Kalscheuer stating her wish to relocate with the minor child, there were no disputes between the parties after the judgment of divorce.

Mrs. Kalscheuer married Mark Kalscheuer (Mr. Kalscheuer) on June 20, 2020. Mr. Kalscheuer is from Wisconsin and has many family members who reside there. His eighteen-year-old daughter is a student at the University of

Wisconsin. Mrs. Kalscheuer and the minor child have visited Wisconsin with Mr. Kalscheuer four times.

Mrs. Kalscheuer submitted two notices of relocation to Mr. Wingate in 2020. She indicated that she had an employment opportunity in Wisconsin and that she and her new husband wished to live there. Mr. Wingate opposed the move but admitted that Mrs. Kalscheuer was not proposing the relocation for the purpose of separating him from their minor child.

The petition for permission to relocate came for hearing on March 30, 2021, and April 9, 2021. The trial court granted Mrs. Kalscheuer permission to relocate to Wisconsin by judgment dated April 13, 2021. This appeal by Mr. Wingate followed.

## III.

## STANDARD OF REVIEW

"A trial court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion." *Curole v. Curole*, 02-1891, p. 4 (La. 10/15/02), 828 So.2d 1094, 1096. "However, as to any underlying factual findings made by the trial court, such as whether the proposed relocation was made in good faith and whether the proposed relocation was in the best interest of the child, the manifest error standard of review is applicable." *Gautreaux v. Gautreaux*, 19-1486, p. 5 (La.App. 1 Cir. 7/23/20), 309 So.3d 362, 365-66.

## IV.

## LAW AND DISCUSSION

"The person proposing the relocation has the burden of proof that the proposed relocation is made in good faith and is in the best interest of the child." La.R.S. 9:355.10.

Louisiana Revised Statutes 9:355.14 states:

A. In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:

(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.

(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

B. The court may not consider whether the person seeking relocation of the child may relocate without the child if relocation is denied or whether the person opposing relocation may also relocate if relocation is allowed.

Mr. Wingate argues that the trial court erred in finding that Mrs. Kalscheuer's request to relocate was made in good faith. He notes that the statute requires Mrs. Kalscheuer to prove that the relocation request is made in good faith but that "good faith" is not defined by the statute. "[T]he jurisprudence has defined the meaning of the term good faith in this context as a legitimate or valid reason for the move." *McLain v. McLain*, 07-752, p. 13 (La.App. 4 Cir. 12/12/07), 974 So.2d 726, 734. The court in *McLain*, 974 So.2d at 734, *citing* Janet L. Richards, *Children's Rights v. Parents' Rights: A Proposed Solution to the Custodial Relocation Conundrum,* 29 N.M. L.Rev. 245, 263 (Spring 1999), noted the following legitimate reasons for a relocation request:

(i) to be close to significant family or other support networks;

(ii) for significant health reasons;

(iii) to protect the safety of the child or another member of the child's household from a significant risk of harm;

(iv) to pursue a significant employment or educational opportunity; or

(v) to be with one's spouse (or equivalent) who is established, or who is pursuing a significant employment or educational opportunity, in another location.

Mrs. Kalscheuer testified that she is presently employed by the Leverage House, a company that assists real estate agents with transactions, as a transaction

4

coordinator.[1] She indicated that upon relocation to Wisconsin, she would receive a promotion to director for the State of Wisconsin. Austin Polk (Mr. Polk) is the owner of the Leverage House. At present, Mrs. Kalscheuer is his only employee. He testified that as a director for the Leverage House in Wisconsin, Mrs. Kalscheuer could make in excess of $3,500.00 per month on a commission-based salary. According to Mr. Polk, the specifics of a formal job offer, including a ten percent share of the company, had not been "ironed out." Mr. Polk and Mrs. Kalscheuer agreed that the job offer was not specific to Wisconsin, but they both indicated that Mr. Kalscheuer's contacts in Wisconsin would help establish business there. Mr. Kalscheuer is employed as a real estate agent for Keller Williams in Lake Charles, Louisiana, and he would continue this employment in Wisconsin.

Mr. Wingate argues that the employment opportunity given by Mrs. Kalscheuer is not a legitimate reason for the relocation request because her salary would not be guaranteed and because the job offer is not specific to Wisconsin. Mr. Wingate asserts that "Wisconsin offers no different employment opportunity than Jennifer and her husband have right now in Lake Charles. The employment with the Leverage House is merely a pretext to add legitimacy to her request for relocation." The trial court stated its conclusion that the "business opportunity with [t]he Leverage House is that, while it is clearly not the reason that she wants to relocate, it is [a] legitimate and good faith opportunity for her should the relocation request be granted." Mr. Wingate relies upon this statement as support for his argument that Mrs. Kalscheuer's relocation request was not made in good

---

[1] Mrs. Kalscheuer has a real estate license, but it is on inactive status.

faith and that since the request was not made in good faith, the factors set forth in La.R.S. 9:355.14 should not have been considered by the trial court.

The trial court, however, further stated: "Among the primary reasons for the move is that Jennifer's husband is from Wisconsin, and as a couple, they desire to move there to live. That is a decision that they have made as a couple and which they believe is best for them as a family." The trial court also cited *Broomfield v. Broomfield*, 283 So.2d 839, 841 (La.App. 2 Cir. 1973), for the proposition that a custodial parent has a right to be "reasonably unrestricted in selecting a place of residence for economic and justifiable personal reasons."

We find no error in the trial court's finding that Mrs. Kalscheuer's relocation request was made in good faith. We note that the list of legitimate reasons recognized in the jurisprudence is neither exclusive nor exhaustive. Nonetheless, in Wisconsin Mrs. Kalscheuer will be close to her husband's family, and they will live rent free with her father-in-law until they are able to purchase their own home. Mrs. Kalscheuer will be able to pursue a promotion with her present employer, which is a significant opportunity. We note that an "opportunity" does not require a guarantee of success. Mrs. Kalscheuer will be with her husband, who is a licensed real estate agent in Wisconsin and will continue to be employed with Keller Williams there.[2] The trial court noted that the decision to relocate to a place where there are family members and job opportunities is reasonable. Furthermore, the trial court noted that "the consistent theme of the vast majority of cases which do not find 'good faith' is that the relocating parent has acted badly[] or contrary to the law." We find, as did the trial court, that this factor does not exist in this case.

---

[2] Mr. Kalscheuer is employed by Keller Williams in Lake Charles, Louisiana. He testified that he is currently a member of Keller Williams Realty Madison East in Wisconsin, but he has not yet worked as an agent in Wisconsin.

6

The trial court gave an extensive and well-reasoned review of all of the factors set forth in La.R.S. 9:355.14, except those that are inapplicable due to the child's age. The trial court recognized that there is some overlap among the factors considered in determining "good faith" with those elements used to determine "best interest." Mr. Wingate argues that while the move will certainly be in Mr. Kalscheuer's best interest because he will be closer to his family, it will result in a loss of familial ties for the minor child in Louisiana and offers no benefit to her.

In determining that the proposed relocation was in this child's best interest, the trial court placed particular emphasis on "the complete agreement by the parties" that Mrs. Kalscheuer has not interfered with Mr. Wingate's relationship with their daughter. The trial court also emphasized that this child has never been with Mr. Wingate for any significant period of time. Mrs. Kalscheuer and Mr. Wingate separated when their daughter was two years old. Mrs. Kalscheuer testified that even during the time they were married and living in the same house, Mr. Wingate was out of town a lot because of his job. Mrs. Kalscheuer has always been the primary caregiver for their daughter. The trial court also gave consideration to the fact that Mr. Kalscheuer was very involved in this child's schooling, including virtual learning during the pandemic, while Mr. Wingate had very minimal involvement.

The testimony established that Mr. Wingate saw his daughter less than fifteen times per year.[3] The trial court noted several instances where over a month elapsed with no contact between Mr. Wingate and his daughter. The trial court recognized that Mr. Wingate and his daughter have a good relationship but stated

_____

[3] Mrs. Kalscheuer kept a diary of Mr. Wingate's visits with their daughter. It included visits with Mr. Wingate's sister. That diary was admitted into evidence.

that "it is centered around his work schedule[] and is based on him simply not being available." The trial court concluded that Mr. Wingate's present relationship with his daughter "can be maintained in a significantly comparable manner, even from the State of Wisconsin."

The trial court also discussed the minor child's relationships with other family members. Mrs. Kalscheuer recognized that this child will miss these family members after the move. It is noted that Mrs. Kalscheuer has a twenty-two-year-old daughter from a previous relationship and that Mr. Wingate has three other children from three prior relationships. They all reside in Louisiana. Mr. Kalscheuer's parents and siblings reside in Louisiana. Mr. Wingate currently lives with his girlfriend and her five-year-old son from a previous relationship. The trial court noted that the child did not have any consistent contact with Mr. Wingate's other children. Mr. Wingate's sister, Wendy Wingate, coordinates visits with Mr. Wingate's family and also exercises Michael's visitation with this child when Mr. Wingate cannot do so. The trial court stated: "It is safe to conclude that whatever relationship [the minor child] has with her father and his family is due to Wendy's efforts[]" but that it did not change the fact that Mr. Wingate's interactions with her "are minimal and inconsistent."

The trial court also noted that the child would attend a quality school in Wisconsin and would benefit from an improved financial condition for Mr. and Mrs. Kalscheuer.

We find that the evidence supports the trial court's finding that relocation to Wisconsin was in the child's best interest.

# V.

## <u>CONCLUSION</u>

For the foregoing reasons, we affirm the trial court's judgment, which allows Jennifer Guillory Wingate, now Kalscheuer, to relocate the principal residence of the minor child to Wisconsin and sets a visitation schedule. All costs of this appeal are assessed to the Plaintiff/Appellant, Michael Lynn Wingate.

**AFFIRMED.**